## CUMMINGS v. CLARK et al.

(District Court, E. D. Pennsylvania. June 9, 1922.)

No. 7230.

1. **Contracts ☞309(1)—Effect of inability of one party to perform.**

If a party seeking to enforce a contract was unable to perform because of a new law affecting the subject-matter, he must bear the loss and cannot enforce the contract, on the theory that he approached performance as nearly as possible; but if he is able to perform, and the law merely prevents the other party from receiving the benefit of the contract, the latter must bear the consequences of the prohibition.

2. **Corporations ☞65—Shares of stock are property.**

Shares of stock in a corporation are not merely evidence of the right of the holder to a corresponding share in the net assets of the corporation, but are in themselves tangible property.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Corporations** ⊛118, 472—**Contract to deliver stated number of shares of stock and bonds of corporation not performed by delivery of less number, though representing same interest in property.**

A contract by plaintiff to deliver to defendants a certain number of shares of stock and bonds of a corporation *held* not performed by tender of a less number, though representing the same interest in the property of the corporation, and though under a ruling of a state commission, created after the contract was made, the issuance of the amount in stock and bonds required by the contract was prohibited.

At Law. Action by Walter J. Cummings, executor, against Edward W. Clark and others, copartners as E. W. Clark & Co. On statutory demurrer. Demurrer sustained.

Duane, Morris & Heckscher, of Philadelphia, Pa., for plaintiff.

Joseph S. Clark, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The question of law raised goes to "a part of the claim" of the plaintiff, but not "to the whole" of it. In consequence, we now enter no judgment or order. Counsel may be able to put the record in such shape as that final judgment may be entered to await any appellate action either party may desire to take. The question is a very interesting one, and is made interesting because of its difficulty. The difficulty is in reaching any judgment which will not visit upon one party or the other an unrequited loss. In common with many situations, our view of the merits of this one is affected by our approach to it. One mode of approach induces us to look upon it as a contract which the defendant was not only willing, but was selfishly interested, and because of this, desirous, to be performed, but performance of which was made impossible by the subsequent acts of the lawmaking power. This is the view which defendant presents. Another approach presents the view of a contract, performance of which may be had, notwithstanding the later requirements of the law have made it necessary to dispense with some purely formal features which had been incorporated into the contract. This is the view which the plaintiff presents.

The cause presents the distinction, sometimes of importance to observe and sometimes not, between justice and legal justice. This is the general view of the cause. More particularly the case is that of one who felt that he owned, and was in a position to control, the title to two properties, one an electric plant and the other a railway. Neither had been a financial success, as before conducted, and both had been made the subject of receiverships. They were recognized to have, however, a substantial value which could, by proper management, be realized. In other words, the familiar situation was presented of utilities companies in need of reorganization.

The plaintiff and defendants were brought together by this situation and entered into a contract which contemplated, as both parties agree, that the defendants should take over the properties, and as the defendants insist, should take them over in a particular way, and in the form of taking over corporate securities to be issued which would give con-

trol of the properties. A plan was accordingly outlined by which the properties were, through judicial sales, to be freed from the entanglements born of former bond and stock issues, and the title to which should be held by a new corporation, the financial organization of which was to take a prescribed form. This was that the company should have authority to issue 7,500 shares of stock, of the par value of $100 each, all of which should have been issued and outstanding, and should have executed a general mortgage, in the sum of $2,000,000, to secure an issue of bonds, $500,000 of which should have been issued, leaving the remaining $1,500,000 to be in reserve as part of the means of making improvements and extensions to the properties of the corporation. This plan of reorganization was lawful at the time of the contract and practically feasible. There were a number of things to be done before it could be carried into effect.

Between the time of the making of the contract and the organization of the contemplated new corporation, the Legislature of the state of Illinois (the state of the domicile) passed a law constituting a Public Utilities Commission. Hurd's Rev. St. 1913, c. 111a. The effect was to radically change the situation of the contracting parties. Before the law was passed they had the privilege (so far as practically concerned them) to outline and carry into effect any plan of financial organization of the proposed corporation they thought to be wise. After the law was passed all such plans were subjected to the control and sanction of the commission. It thus became necessary to submit the plan outlined to the commission for approval. In the effort to secure this approval the defendants co-operated with the plaintiff. Approval was, however, refused, and a different plan became the only one on which the organization of the company could proceed. This reduced the issue of stock from 7,500 shares to 1,420, of the same par value, and the mortgage bond issue from $2,000,000 to $500,000. Plaintiff carried out all the requirements of his undertaking, except in the foregoing particulars of stock and bond issues, and made demand for his agreed compensation. This the defendants refused, on the ground that he had not performed.

This raises the issue between the parties and presents the question to be determined. In thus presenting it, we have ignored the distinction between the two properties. In point of fact, the outline given pertains only to the railway property. The electric plant was free from this complication, and the contract with respect to it was followed to delivery, and the payment of one-half of the contract price. It is involved, however, as the unpaid balance is not payable until there had been performance of the entire contract. The plan, so far as it affects the issue of bonds, has not been accurately stated, but so as to present the point involved. The plaintiff was to retain as part of what he was to receive $450,000 of the bond issue. This was in fact all of the bond issue to be at first outstanding, as $50,000 of the $500,000 was to be part of the resources of the reorganized corporation.

This outlines with sufficient clearness the situation. As the plaintiff presents it, we have a contract to deliver properties, delivery of which has been tendered. The defendants have thus received all for which

they contracted, and this remains true, notwithstanding that it is also true that the ownership is represented by a fewer number of shares than contemplated by the contract. It is substantially, as well as mathematically, true that the resulting integer unit is the same, no matter what the denominator of the vulgar fraction employed to express it. On the other hand, as the defendants present the situation, we have a contract to deliver bonds and stock of a named par value in a corporation, and a tender of something else.

These presentations suggest that we look into the contract to determine whether its subject-matter was the one or the other. Such a quest is, however, futile and idle, for the reason that we would be searching into the minds of the parties for something which was not there. Neither party had the distinction in mind at the time of the contract. That they did have in mind, not that the contemplated stock and bond issues could not be made, but that the plaintiff might not be able to deliver them, is clear from the proviso to the sixth paragraph. The provision is that, if the plaintiff is unable to deliver "the stock of said reorganized company," the parties shall be absolved from further obligation. This provision does not lighten the labors of any one charged with the duty of making a ruling, because each party quotes this clause in his favor. Here again the plain truth is that the language quoted was employed without thought of its application to the situation which afterwards arose. The question must be faced as the broad one arising out of something being agreed to be done, or to be done in a way which was afterwards prohibited by law. The contingency was not foreseen, and the attitude of the parties to it concerns us only in the aspect of the responsibility for its not having been foreseen.

### The Legal Principles Involved.

We start with general principles over which there is no controversy. One is that a contract, the performance of which is prevented by a legal impossibility, subsequently created by law, cannot be enforced. This principle is limited to the impossibility of performance. It does not apply to cases of increased difficulty by reason of expense or otherwise. Another doctrine is that performance is excused, when it is rendered impossible by reason of its subject-matter passing out of existence. Both of these doctrines have the limitation that the thing to be performed has in substantial reality become of impossible performance. If the real thing to be done can be done, and a real performance is not impossible, the obligations of the contract hold. There are two general attitudes displayed toward the broad subject. One is what may be called that of natural justice; the other is that of applying equitable and legal principles. Whether the more elastic and mobile principles of equity or the more rigid and fixed principles of law are applied, the stop is always made short of the writing of a new contract for the parties. Equity always ignores mere forms and looks only to substance. Law looks to duties and obligations, and leaves the parties to bear the consequences of what chances may befall. The cases to which we have been referred are illustrations of these general attitudes. A legal prin-

ciple is that no one can recover upon a contract without performance. If performance becomes impossible, it follows from this point of view that the party unable to perform must accept the consequences. This principle would require us to construe this contract. If, for illustration, it is a contract for 7,500 shares of stock, of the par value of $750,000, it is not performed by a tender of 1,420 shares, of the par value of $142,000. If, on the other hand, however, the contract was for property, or for all the stock representing the ownership of that property, it is performed by a tender of the property, or of all the shares representing its ownership, no matter into how many shares the whole may be divided.

The case of Berry v. Nall, 54 Ala. 446, is an illustration of this legal view. A contract was made for 27 bales of cotton. A tender was made of 25 bales. This was held not to be performance, notwithstanding the fact that the 25 bales aggregated more pounds of cotton than 27 bales of the usual, and therefore the contractual, weight would have weighed. The vendee was held to have the right to get that for which he had contracted.

Leiston v. Leiston, [1916] 2 Law Reports King's Bench Division, 428, to which we have also been referred, is an illustration of another of these attitudes. There one party to the contract performed, in the sense that it did all it was called upon to do. The contract was not performed, in the sense that the other party was not permitted by law to receive the benefits of what the first party had done. The question was whether the party who had been denied all the benefits of the contract was none the less obliged to pay the price. The court held in that case that it was.

Gesnaldi v. Personeni (Sup. 1911) 128 N. Y. Supp. 683, is a further illustration. There a purchaser of a stated quantity of a produce, traffic in which was afterwards forbidden by law, was relieved of his obligation to purchase, while in Bradley v. McHale (1902) 19 Pa. Super. Ct. 300, a party who had agreed to move a house from one location to another within a borough was held to the obligation of his contract, notwithstanding that the municipal authorities prohibited the building from being transported along the streets.

Labaree Co. v. Crossman (1905) 100 App. Div. 499, 92 N. Y. Supp. 565, affirmed in 184 N. Y. 586, 77 N. E. 1189, is another illustration. The contract there was for the delivery of raw coffee. The board of health afterwards prohibited the landing of such a cargo. The vendor was relieved of the obligation of his contract, while in Blow v. Lewis, [1902] 19 London Times Law Reports, 127, a contract to rent a theater was held enforceable, notwithstanding that the license expired before the time limit, and the authorities refused to renew it.

Cochran v. Nirdlinger, 24 Pa. Dist. R. 477, has also been cited. This was also a contract of lease for a theater, the use of which as a theater the authorities afterwards forbade.

[1] These cases and many others which have been and might be cited have distinguishing features, some of which have been noted. In all cases at law to which our attention has been called, the rulings have been in accordance with this distinction. If the parties seeking to

recover have been able to perform, and the prohibition has operated merely to prevent the other party to the contract from receiving its benefits, there such other party must bear the consequences of the prohibition; but where the prohibition has operated to prevent the party seeking to enforce the contract from performance, he has in no case been permitted to recover. To permit a recovery on the theory that he had approached performance as nearly as it was permitted him to do would be to rewrite the contract, and this in no instance has been done.

The plaintiff in this case can recover only by showing performance. He has shown it, or not shown it, according to what it is determined he was to do. If he was to deliver the property which made up the assets of the reorganized company, he has performed. If he was to deliver a designated number of shares in the stock of a company, which holds among what may be called its potential assets its issuable bonds to a named sum, the plaintiff did not perform.

[2] This takes us back to the suggested construction of the contract. The old concept of what are commonly called shares of stock in a corporation, that they are merely evidence of the right of the holder to correspondingly share in the net assets of the corporation, is no longer either the popular concept or the concept of business of what they are. They are property, not evidence of title to property; they are tangible property, which may have a location of its own. This has been held to be the case for tax purposes in De Ganay v. Lederer, 250 U. S. 376, 39 Sup. Ct. 524, 63 L. Ed. 1042, and is as true for other purposes. The question there was what was meant by the language employed in a taxing act. The question here is what the words in the agreement meant.

[3] The argument addressed to us, and it has force, as well as plausibility, is that all the net assets and holdings of a corporation are represented by all of its shares of stock, and that these assets or holdings are neither increased nor diminished by the number of the shares of the stock which represent it. This statement is undoubtedly true, but none the less we are of opinion that the concept of the business mind, and particularly bankers, promoters, and others who deal in so-called investment securities of what are called stocks and bonds, is that they are property. Inasmuch as this contract describes the property which the plaintiff was to deliver as 7,500 shares of stock in a corporation, the contract is not performed by the delivery of a less number of shares in a corporation having a different financial organization.

In the language of the Practice Act, the question of law raised and above discussed is determined in favor of the defendants. We are, however, unable to enter judgment in favor of the defendants, because there remains the question of the liability of the defendants to pay for the stock of the electric company, their liability to pay for which is not affected by the ruling above made. Counsel may, however, readily be able to put the record in such shape as will permit judgment to be now entered. To enable this to be done, leave is granted to either party to move for the further order of the court.