IRA H. LOHMAN, Ancillary Administrator in Missouri of Estate of CARL F. W. G. UPMANN, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, A Missouri Corporation.—33 S. W. (2d) 112.

Court en Banc, November 25, 1930.

D. W. Peters and Barnett & Hayes for appellant.

*Frank H. Moore, Cyrus Crane, Hugh E. Martin* and *A. F. Smith* for respondent; *S. W. Moore* of counsel.

BLAIR, J.—This is an action instituted in the Circuit Court of Jackson County by plaintiff administrator to require defendant railway corporation to issue and deliver to him certain certificates of stock in said corporation in lieu of certificates held by Carl F. W. G. Upmann, deceased, and to account and pay over to him all dividends on such stock since the death of said Upmann. The trial court sustained defendant's motion for judgment on the pleadings, and plaintiff was granted an appeal to this court.

On May 16, 1923, plaintiff was appointed by the Probate Court of Cole County, Missouri, as ancillary administrator in Missouri of said estate. Defendant is a Missouri corporation, having its chief office and a line of railroad in this State, and is also engaged in carrying freight and passengers in interstate commerce. Upmann owned one hundred shares of the preferred stock and four hundred shares of the common stock of defendant corporation. He was a resident of and died in the State of New York, September 19, 1922, and had the certificates for said stock in his possession in New York at the time of his death. The estate of said Upmann, including said stock certificates, was in process of administration in New York when the petition in this case was filed. Plaintiff claimed title to said shares of stock and the right to administer upon the same in Missouri, and notified defendant corporation of his claim and demanded the issuance to himself of certificates evidencing such ownership and an accounting of the dividends earned on said stock and payment thereof to himself. Defendant refused such demands.

Defendant then had issued and outstanding twenty-one millions of its preferred stock and thirty millions of its common stock, held by 6,851 stockholders residing in a number of foreign countries and all of the states of the Union, except North Dakota. For twenty-five years defendant had maintained a transfer office in New York City, where practically all of its transfers of stock had been made.

The executors of Upmann's estate had qualified as such and, under the order of the Surrogate Court of the State of New York, had taken possession of all personal property of said Upmann and had inventoried the same, including the certificates of stock issued by defendant, and had demanded that defendant transfer said stock to them. Defendant complied with such demand and made said transfer and issued its certificates of stock to said executors. The demand of plaintiff that certificates should be issued to himself as ancillary administrator in Missouri was not made upon defend-

ant until after such transfer and re-issue of certificates to the New York executors had been effected.

Deceased Upmann had never been a resident of the State of Missouri and, under the admitted facts as set out in the pleadings, his estate was not indebted to any citizen or resident of this State; nor did his estate owe any taxes to this State or to any governmental subdivision thereof, and no heir, legatee, devisee or distributee of said estate lived in Missouri.

Although defendant had transferred the Upmann stock on its books at its New York office and had issued new certificates therefor to the New York executors before it had notice of plaintiff's claim, plaintiff claims that he is nevertheless entitled to have defendant corporation issue certificates for said shares of stock to him and to have the dividends thereon paid to him, and assigns as error the various rulings of the trial court which resulted in denial of such asserted right. In support of his claim plaintiff relies upon the following decisions of this court en banc and division: Richardson v. Busch, 198 Mo. 174, 95 S. W. 894; Troll v. Third National Bank of St. Louis, 278 Mo. 74, 211 S. W. 545; Troll v. Third National Bank of St. Louis (Mo. Sup.), 216 S. W. 922; Troll v. United Railways Co. (Mo. Sup.), 216 S. W. 923; Troll v. National Bank of Commerce (Mo. Sup.), 216 S. W. 923. The last three cases merely followed the first Troll case reported in 278 Missouri, and applied the rule there enunciated to the facts in the particular cases.

In the Richardson case, certificates of stock in a New York corporation owned by one De La Vergne, a resident of New York, had been put up in this State as collateral security to indemnify Busch, a Missouri resident, against loss as surety upon a bond given in an attachment suit instituted in the city of St. Louis. De La Vergne died in New York and thereafter the liability of Busch on the bond was terminated. Richardson, as ancillary administrator of the De La Vergne estate in Missouri, demanded that Busch deliver said stock certificates to him and, upon Busch's refusal, sued him for conversion of the certificates. Upon this state of facts, the court en banc, through VALLIANT, J., held that the stock was in New York and not in Missouri when De La Vergne died in New York, where he had lived during the time he owned said stock, and further held that the certificate of stock itself was not property, but merely evidence of the ownership of shares in the corporation and, as the corporation was domiciled in New York and there was no property of the corporation in Missouri, De La Vergne owned no property in Missouri at the time of his death. It was held that the property evidenced by a stock certificate in a corporation of another state is no more within the reach of Missouri process than real estate situated in another state by process against title deeds thereto.

The Richardson case was ruled largely on the authority of Jellenik v. Huron Copper Min. Co., 177 U. S. 1, wherein Mr. Justice HARLAN held that the Federal Circuit Court for the Western District of Michigan had jurisdiction of a controversy involving the ownership of stock in and control of a Michigan corporation, where the certificates of stock were in Massachusetts and the owners thereof were residents of that state and had not been personally served with process in Michigan, and further held that the non-resident stockholders could be brought in by substituted service. All of the physical property of the corporation was in Michigan. The court said:

"Whether the stock is in Michigan so as to authorize that state to subject it to taxation as against individual shareholders domiciled in another state, is a question not presented in this case, and we express no opinion upon it. But we are of opinion that it is within Michigan for the purposes of a suit brought there against the company—such shareholders being made parties to the suit—to determine whether the stock is rightfully held by them. The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner. This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another state, at which a book showing the transfers of stock may be kept."

In the first Troll case (278 Mo.), the banking corporation had its domicile in Missouri and the certificate of stock was held in Illinois where the owner thereof lived and was in that state when she died. Her executor in Illinois had possession of the certificate at the time Troll filed his suit. The defendant bank refused to issue a certificate to the ancillary administrator in Missouri. Following the Richardson case, the court en banc held that the property represented by the certificate of stock had its situs in Missouri where the bank was located, and that the Missouri ancillary administrator was entitled to administer thereon. The judgment of the trial court, rendered upon the sustaining of a demurrer to plaintiff's petition, was reversed and the cause was remanded for trial.

In Baker v. Baker, Eccles & Company, 242 U. S. 394, Charles Baker died in Tennessee, owning shares in defendant corporation, which was organized and had all its property in Kentucky. His widow took out letters of administration in Tennessee and inventoried the said shares of stock, the certificates for which she had in her possession. Baker's mother lived in Kentucky and took out

letters of administration on his estate in that state. By the laws of Tennessee, the widow took all the surplus personal estate of her husband, while under the laws of Kentucky the widow and the mother shared equally in the personal property of the estate of the deceased husband.

After settling the estate in Tennessee and securing an order of distribution to herself of the stock in said corporation and other property, the widow brought a suit in Tennessee and attempted to bring in the Kentucky mother by publication. She secured a decree finding that Charles Baker was a resident of Tennessee at his death and that the widow was sole distributee and that the title to the stock was in her.

Thereafter the widow brought suit in Kentucky against the corporation, setting up the Tennessee suit and resulting judgment, and praying that the corporation be required to issue to her certificates for all of the shares of stock held by Charles Baker ·in his lifetime and to pay to her certain indebtedness due from the corporation to Baker. In this suit the mother of Charles Baker intervened and claimed that he died a resident of Kentucky and that she was entitled to one-half of the shares of stock and the indebtedness sued for and challenged the validity of the Tennessee judgments in so far as they affected her claim. The Kentucky trial court dismissed the widow's petition. On appeal to the Kentucky Court of Appeals, the judgment of the trial court was affirmed and that court was directed to modify its judgment by finding that Charles Baker was a resident of Kentucky at his death.

This judgment of the Kentucky Court of Appeals was affirmed by the United States Supreme Court on the ground that the shares of stock had no situs outside of Kentucky, the state of incorporation, and that the Tennessee judgment was not binding on the mother of deceased, because there was no personal service on her in Tennessee and because publication against her, based on the theory· that the property represented by the certificate was in Tennessee, was not valid, because the situs of the stock was in Kentucky.

Plaintiff cites other cases to the same general effect, but they do not add anything to the rulings made in the cases above considered.

The case at bar differs from the Troll case (278 Mo.) in this: That defendant maintained an office in New York City for the transfer of the shares of stock and the executors of Upmann's estate presented the certificates of stock at said New York office and demanded that new certificates be issued to them in lieu thereof and defendant had actually issued such new certificates before plaintiff notified it of his claim to said stock as ancillary administrator in Missouri. True, Mr. Justice HARLAN said in the Jellenik case that the principle there announced "is not affected by the fact that the defendant is au-

thorized by the laws of Michigan to have an office in another state, at which a book showing the transfers of stock may be kept,'' but it does not appear in that case that new certificates had been issued to the defendants at such office. Besides, there was much more involved there than the ownership of shares of stock. The physical property and its management were also involved and the corporation itself was a party to the suit.

We have much doubt concerning the correctness of the ruling in the Troll case, if that case be regarded as laying down the absolute and unvarying rule that, for all purposes and regardless of the absence of claims against the estate of deceased by this State or its political subdivisions for taxes or claims by its citizens for debts or as distributees, the situs of shares of stock in Missouri corporations is in this State and nowhere else.

The Troll case was ruled upon the authority of the Richardson case, and the latter case upon the authority of the Jellenik case. Yet, with the subsequent approval of the United States Supreme Court, Judge LEARNED HAND in Direction Der Disconto-Gesellschaft v. United States Steel Corporation, 300 Fed. 741, sitting as United States District Judge in the Southern District of New York, declared that the Jellenik case did not lay down the rule that a certificate of stock could have no situs as property at any place other than in the corporate domicile. In that and the companion case two German claimants owned certificates for one hundred shares each of the stock of the United States Steel Corporation, organized under the laws of New Jersey. These certificates were in England when the World War began and were there seized by the public trustee as enemy property. The German claimants brought separate suits against the United States Steel Corporation and other defendants to establish their title to the stock. The question in the case was: ''Whether the title of the public trustee by capture is good against enemy owners when the property consists of shares in a New Jersey corporation, when the registered shareholders were subjects of Britain, and had indorsed the certificates in blank, and when the certificates had been physically reduced to possession in the United Kingdom by the public trustee.''

It was ruled that the public trustee was entitled to be registered as shareholder and to have the proper certificates of stock issued to him. The capture of the certificates was in England and the suit, which resulted in a decree directing that the shares be registered in the name of the public trustee, was instituted and heard in New York, while the corporation itself was domiciled in New Jersey. In disposing of the case relied upon by the German claimants, Judge HAND said:

"The case of Jellenik v. Huron Copper Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647, is often cited to show that corporate shares can have no situs, except at the domicile of the corporation. It holds nothing of the sort; only that they do have a situs there, which is a very different matter. In truth, corporate shares have a situs in both places, so long as we insist upon applying to them a word drawn from the law of land and chattels, which must be in a single place at a time. Because a share, if we do not wish to call it a chose in action, is at least a legal relation, and can have no spatial character except by virtue of the parties to the relation. Wherever either party is, there is the property as respects such parts of the relation as touch that party. Where the corporation is, there dividends must be paid and all other duties performed to which the shareholder is entitled. There also may the sovereign declare who shall be the shareholder. Acts required of the corporation as performance of those duties will be normally treated as performance elsewhere. Similarly, where the shareholder is, there the share may be transferred by compulsion, and perhaps, since he is subject to compulsion, by decree *in rem*, even when he does not obey. There is no inconsistency in all this until one presupposes that, because the share is in one place, it cannot be in any other. Jellenik v. Huron Copper Co., supra, does not intimate anything of the sort."

Judge HAND's ruling was reviewed by the United States Supreme Court. [Direction Der Disconto-Gesellschaft v. United States Steel Corporation, 267 U. S. 22.] In an opinion by Mr. Justice HOLMES, in which all the justices concurred, the learned justice approved Judge HAND's ruling, as follows: "The cases were submitted by them upon an agreed statement of facts, and the District Court after a discussion that leaves nothing to be added dismissed the bills." And again Mr. Justice HOLMES said:

"Therefore New Jersey having authorized this corporation like others to issue certificates that so far represent the stock that ordinarily at least no one can get the benefits of ownership except through and by means of the paper, it recognizes as owner anyone to whom the person declared by the paper to be owner has transferred it by the indorsement provided for, whenever it takes place. It allows an indorsement in blank, and by its law as well as by the law of England an indorsement in blank authorizes anyone who is the lawful owner of the paper to write in a name, and thereby entitle the person so named to demand registration as owner in his turn upon the corporation's books. *But the question who is the owner of the paper depends upon the law of the place where the paper is.*" (Italics our own.)

The Disconto-Gesellschaft case seems conclusively to establish the rule that shares of stock in a corporation, represented by ap-

propriate certificates of stock, constitute property in themselves, and not merely evidence of ownership, and have a situs for some purposes elsewhere than in the state where the corporation is domiciled. That case announces the latest and the controlling rule of the United States Supreme Court. See also DeGanay v. Lederer, 250 U. S. 376, 1. c. 381; Cummings v. Clark (D. C. Pa.), 282 Fed. 300, 1. c. 305; Vidal v. South American Securities Co., 276 Fed. 855, 1. c. 868, 869.

The certificates of stock held by Upmann must, therefore, be regarded as having the character of personal property in themselves and a situs for some purposes in the State of New York. Defendant maintained a transfer office in that State and an actual transfer of the stock and reissuance of the certificates representing the same occurred in New York before plaintiff notified defendant of his claim as ancillary administrator in Missouri. Such facts, in connection with the admitted facts that there are no debts owing by the estate to residents of Missouri and that there are no unpaid taxes here, must be regarded as sufficient to defeat plaintiff's right thereafter to have a transfer of the stock to himself for the purposes of ancillary administration in Missouri, even though the Troll case does authorize such ancillary administration in a case where such transfer had not been accomplished at a transfer office outside of Missouri. The very question involved here has been specifically determined adversely to plaintiff's contention in cases where the facts are not only comparable, but in some of the cases practically identical. [Lockwood v. United States Steel Corporation, 209 N. Y. 375; Fairchild v. Lohman (W. D. Mo.), 13 Fed. (2d) 252; Norrie v. Kansas City Southern Railway Co. (S. D. N. Y.), 7 Fed. (2d) 158; Norrie v. Lohman (same case in C. C. A.), 16 Fed. (2d) 355.]

It is argued by plaintiff that the only way to ascertain whether or not there are any debts against the estate of Upmann due citizens of Missouri is to have ancillary administration in Missouri. That argument is without force in view of the fact admitted by the pleadings that there are no debts against the estate due to Missouri citizens. Where there are such claims or there are taxes due this State, a different situation would no doubt exist. While the act appearing in Laws of 1925, page 101 (amending Laws 1923, p. 107), has no bearing on the case at bar, that act makes ample provision for the protection of claims of Missouri citizens upon the estates of non-resident decedents owning shares of stock, credits or choses in action theretofore subject to ancillary administration in this State.

The 1923 and 1925 acts were doubtless passed to relieve the unnecessary hardship upon the estates of non-resident decedents made possible by our decision in the Troll case (278 Mo.) and evidence a legislative policy more just to non-resident owners of Missouri

securities and one better calculated to encourage investments by non-residents in such securities in the future.

Although the facts seem to distinguish the case at bar from what was really decided in the Troll case, we nevertheless feel that we should transfer the case to Court en Banc, which alone has the power to speak authoritatively concerning the scope and effect of one of its own decisions.

The trial court correctly decided the issues upon the facts admitted by the parties under the pleadings in the case. Its judgment is therefore affirmed, but, for the reasons stated, the case is transferred to the Court en Banc. All concur.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of BLAIR, J., delivered in Division Two, is adopted as the decision of the court. *Ragland, C. J.,* and *Blair, Atwood, Gantt, Frank* and *White, JJ.,* concur.