duty of this court to reverse and render the judgment.

"When we came to consider the case after submission we found from examination of the record that there was no allegation of malice in the plaintiffs' petition, nor was there anything in the evidence adduced upon the trial tending to show malice on the part of Mr. Barr at the time he made the charge complained of. We also found and still hold that the undisputed evidence in the case as adduced upon the trial showed that at the time Grady Barr accused Mrs. Layton of taking the bloomers he honestly believed that she had taken them and that therefore it must be held that the charge against Mrs. Layton was not made in bad faith. We also found upon the undisputed facts as disclosed by the record that the two strange women who were in appellant's store at the time Grady Barr charged Mrs. Layton with taking the bloomers were not present by the design or with the invitation of Mr. Barr or any of the clerks in the appellant's store, and we held that even if these two strange women did hear what Mr. Barr said to Mrs. Layton about the bloomers, under such circumstances, it could not have the legal effect to destroy the privilege under which the charge was made by Mr. Barr and we therefore held that the appellant was not liable and reversed and rendered the judgment, as will be seen in the opinion of this court reported in 7 S.W.(2d) 190. The authorities upon which we based our opinion will be found therein.

"Question No. 1. Upon the pleadings of the parties and the undisputed facts as we have stated them above, was this court in error in holding that there was no liability shown on the part of appellant for the reason that the slanderous charge complained of was qualifiedly privileged?"

■■ It is settled in this state that a communication made in good faith, in reference to a matter in which the person communicating has an interest, is privileged, if made to another for the purpose of protecting that interest, and that a communication made in the discharge of a duty and looking to the prevention of wrong towards another is so privileged when made in good faith. Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Simmons v. Dickson, 110 Tex. 230, 213 S. W. 612, 218 S. W. 365; International & G. N. Ry. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181.

■ The precise question to be determined here is whether or not the fact that the utterances of Barr, imputing the crime of theft to Mrs. Layton, were made in the presence and hearing of the two women customers who had no interest in the subject-matter of the communication, and whose presence was casual and not by design of Barr, renders the communication unprivileged. In conference with the Supreme Court, we have been instructed to hold that the defamatory statements of Barr lost their privileged character by reason of the fact that same were made in a store open to the general public, and in the presence and hearing of customers who were there on the implied invitation of the appellant, and who had no interest in the subject-matter of the statements.

This holding sufficiently answers the question certified, and we recommend that it be so answered.

CURETON, C. J.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

**IVEY et al. v. NEYLAND et al.**
No. 1281—5335.

Commission of Appeals of Texas, Section A.
March 12, 1930.

314

Holland & Moore and George K. Holland, all of Dallas, for plaintiffs in error.

Crosby & Estes, of Greenville, for defendants in error.

CRITZ, J.

This suit was instituted in the district court of Dallas county, Tex., by Mrs. T. C. Ivey, formerly Mrs. J. W. Benson, and her husband, against Mayo W. Neyland, Jr., Robert R. Neyland, and Mayo W. Neyland, Sr., for cancellation and rescission of a contract of sale of a one-fourth interest in 231 shares (par value $100 each) of stock in the First National Bank of Montgomery, Ala. The suit is based on fraud. No damages were sought. The case was transferred to the district court of Hunt county, Tex., where a trial was had before the court without the intervention of a jury, resulting in a judgment for Neyland et al. The case was duly appealed to the Court of Civil Appeals for the Sixth District at Texarkana, which court affirmed the judgment of the trial court. 11 S.W.(2d) 608. The case is now before the Supreme Court on writ of error granted on application of Mrs. Ivey and her husband.

The Court of Civil Appeals makes a very comprehensive statement of the facts and issues of the case, and, for the sake of brevity, we refer to the opinion of that court for a full statement. However, in order that this opinion may be complete within itself, we make the following brief reference to the facts:

It seems that one C. A. M. Pitts, at the time of his death in 1919, owned 231 shares of stock of the First National Bank of Montgomery, Ala. Pitts left a will dated August 13, 1916, which was duly probated in this state, where he lived at the time of his death, which will contained the following bequest to Mrs. Mary Grace Benson:

"First: I give and bequeath to my sister, Mary Grace Benson (231) two hundred and thirty one shares of First National Bank stock, of Montgomery, Alabama.

"Face value ($100.00) one hundred dollars per share or (23100.00) twenty three thousand one hundred dollars.

"My valuation this stock ($200.00) two hundred dollar per share. The aforesaid bank stock of the First National Bank of Montgomery, Alabama, is to remain intact can neither be sold or traded, and only the interest amounting to ($1848.00) one thousand eight hundred and forty eight dollars annually, or (.08) eight per cent. face value pays (.02) two per cent quarterly as follows:

"January first, April first, July first and October first. Each quarterly payment amounting to ($462.00) Four hundred and sixty two dollars.

"At the death of Mary Grace Benson, this aforesaid bank stock of First National Bank, of Montgomery, Alabama, shall become the property of her four sons, namely: John William Benson; James Coleman Benson; Joseph Eugene Benson; and Walter Lee Benson; but this stock shall still remain intact, and can neither be sold or traded by any of the four, said sons of Mary Grace Benson, individually or collectively, but only the interest of ($1848.00) One thousand eight hundred and forty eight dollars annually or ($462.00) four hundred and sixty two dollars quarterly, to be equally divided among the aforesaid four sons of Mary Grace Benson."

John William Benson, one of the four sons of Mrs. Mary Grace Benson, mentioned in the above will, married the plaintiff Mrs. Ivey in April, 1920, and died intestate, and without children, in January, 1924. Mrs. Ivey, then the widow of John William Benson, on June 12, 1925, by written instrument sold her undivided one-fourth interest in the bank stock which she heired from her deceased husband, John William Benson, to the defendant R. R. Neyland, Mayo W. Neyland, Jr., acted as R. R. Neyland's agent, in making the purchase. Mrs. Ivey later married T. C. Ivey, and joined by him prosecuted this suit against the de-

fendants seeking to cancel the transfer above mentioned, and to recover back her interest in the stock on the ground of fraud. The trial court finds that the stock, at the time of the transfer, was of the par value of $100 per share; that it had no market value at that time; and that its intrinsic value was $151.98 per share. It is further shown that Mrs. Mary Grace Benson was living at the time of the sale, and at the time of the trial. Her life expectancy at the time of the transfer was eleven years. Neyland paid $500 for Mrs. Ivey's interest in the stock.

It will thus be seen that at the time of the transfer in question Mrs. Ivey owned an undivided one-fourth interest in the 231 shares of stock burdened with the right of Mrs. Grace Benson to enjoy the same, and collect the dividends thereon during her natural life. Her life expectancy, as above shown, was eleven years; but of course no one knows how long she will live.

■ Plaintiff's first assignment of error is as follows: "The Court erred in its holding to the effect that the value of appellant's interest in the bank stock on June 12th, 1925, the date of the sale transaction, was not the value to be used in determining whether appellant sustained any damage by reason of the transaction, but that the value of the stock as of the time when Mrs. Mary Grace Benson might die should be looked to to so determine."

We are of the opinion that this assignment should be sustained.

In an ordinary suit for damages based on fraud, the measure is the difference between the price paid and the value of the thing sold at the time of the sale. Moore v. Beakley, 215 S. W. 957 (Tex. Com. App. Opinion approved); Butler v. Anderson, 107 S. W. 656 (Tex. Civ. App. Writ. Ref.); Reed v. Holloway, 127 S. W. 1189 (Tex. Civ. App.); p. 27 C. J. 91.

■■ This is not a suit for damages, but in order for plaintiff to recover in rescission it must appear that she suffered legal injury by the transaction. In order to show injury in this case, she must prove that her interest in the stock, at the time of the transfer, was worth more than the $500 paid. We think the evidence conclusively, and as a matter of law, shows that the price paid was substantially less than the legal value of Mrs. Ivey's interest in the stock. Of course, Mrs. Ivey's interest was not worth what it would have been had it not been burdened with the right of Mrs. Grace Benson to collect the dividends during her natural life; but since the trial court on substantial evidence has found the intrinsic value of the stock at the time of the sale was $151.98, we think injury should be tested by discounting the whole intrinsic value of Mrs. Ivey's one-fourth interest in the stock at the time of sale to its present worth. If this is done at 6 per cent., the legal rate, or

8 per cent., the amount the stock had been earning at the time, compounded annually for eleven years, which was the life expectancy of Mrs. Mary Grace Benson, the results will both show injury, and also a grossly inadequate consideration. We do not decide which method should be pursued, as this is not a suit for damages, and injury is shown by either method. It is sufficient to say that the evidence shows a legal injury to Mrs. Ivey in case she is shown to have a right to recover in rescission for fraud otherwise, and the fact that the real or intrinsic value of the stock at the end of eleven years, or at the time Mrs. Mary Grace Benson may die, cannot now be known, will not avail as a defense when we consider the case from the standpoint of injury.

We now come to consider the question as to whether the judgment of the trial court, and the Court of Civil Appeals, should be disturbed even though we find that Mrs. Ivey received less than the intrinsic legal value of her interest in the stock.

■■ As we understand the plaintiff's petition, it is based on fraud. The fraud alleged is: (a) False and fraudulent representations; and (b) that the purchaser stood in a fiduciary relation to the seller, being the attorney for the estate of which Mrs. Ivey was part owner, and was therefore charged with the duty to make full disclosure of all material matters involved in the transaction, that he failed to do so, and that such failure was a fraud in law.

The case was tried before the court without the intervention of a jury, and unless there is no evidence in the record to sustain the judgment, or the record shows affirmatively that the court tried and decided the case on an erroneous theory of law, it must be affirmed.

The uncontradicted evidence shows that the purchaser of the stock in question was the attorney for the estate of C. A. M. Pitts, deceased, at the time of the transaction, and that Mrs. Ivey was one of those interested in the estate as a part owner. We think the relation of attorney and client existed and that it was the duty of the attorney, and his agent in dealing with the client, to make a full and fair disclosure of all material matters known to the attorney in connection with the stock, and that a failure to do so would constitute legal fraud. 26 C. J. p. 1076, par. 18; Pitman v. Holmes, 34 Tex. Civ. App. 485. 78 S. W. 961.

The record discloses, as a matter of law, that Mayo W. Neyland acted as agent for his father in the purchase of this stock; that the father was the attorney for the estate; that the stock was a part of the estate; that Mrs. Ivey was one of the part owners of the stock in question, subject to the right of Mrs. Mary Grace Benson to collect the dividends thereon for the term of her natural life; that

her life expectancy was eleven years at the time of the trade; that the real intrinsic value of Mrs. Ivey's one-fourth interest in the stock, burdened as it was with this life estate of Mrs. Benson, was several times the consideration paid; and that the consideration paid was, in law, grossly inadequate.

The evidence and the findings of the trial court further show that the purchaser of this stock had information relative to the par value, and the intrinsic value of the stock.

We now come to consider whether Mayo W. Neyland, Jr., the agent, made a full and fair disclosure to Mrs. Ivey of all material facts connected with the transaction. He was sworn as a witness for the defendant, and testified on direct examination: "I did not tell her anything about the value or non-value of the stock; I had no information from any source as to the real value of the stock. I made no representations to her as to what the real value of the stock was." On cross-examination this witness testified: "I did not make any representations to Mrs. Ivey concerning the value of this bank stock, none whatever. I did not tell her what the market value of it was, I had no idea of the value of it. I did not tell her anything about the condition of the bank. I did tell her the number of shares and told her I wanted to buy it and what I would pay." As above shown, the findings of the trial court show that the purchaser himself did have information in regard to the par value, and also the intrinsic or real value, of this stock at the time of the trade.

Further, the testimony of Mayo W. Neyland shows that he told Mrs. Ivey that the brothers of her deceased husband were disputing her title to the stock, and contending that they would inherit their deceased brother's interest. He also told Mrs. Ivey that under the laws of Alabama she would not inherit, and that under the will the sale of the stock was prohibited. The statement about the laws of Alabama is shown to have been incorrect, and it shows that Mrs. Ivey would have taken as an heir of her deceased husband under the laws of Alabama just the same as she would under the laws of Texas. It is true that he also told her that his father, who was the purchaser of the stock, was of the opinion that she would take as an heir of her husband under the laws of Texas, and also told her that his father thought she had a right to sell her interest. It is evident, however, that these statements were calculated to make Mrs. Ivey uneasy about her ti-

tle to the stock and right to sell the same. Under the circumstances of this case, the purchaser standing in a fiduciary relation to the seller, it was the duty of the purchaser to have made a full, frank, and unconditional statement to Mrs. Ivey to the effect that she had inherited a good and valid title to her husband's one-fourth interest in this stock; that his surviving brothers had no right, title, or interest therein; that she had a good and perfect right to make a sale thereof; and that all of these matters were free from doubt.

Finally, we are of the opinion that the evidence conclusively shows, as a matter of law, that a fiduciary relation, that of attorney and client, existed between the purchaser of this stock and Mrs. Ivey; that the purchaser failed to convey to Mrs. Ivey information material to the transaction, the par and intrinsic value of the stock, when that information was known to him; that other statements were made to Mrs. Ivey at the time of the trade that were calculated to cause her to feel uneasy in regard to the title to the stock in question; that these statements were made to induce her to consummate the sale; and that these statements were not made in a way that they would be considered in law fair and full when made by an attorney dealing with his client. It is true that the transaction occurred through an agent acting on the part of a purchaser, but this does not alter the legal responsibility of the attorney, for the reason that if he deals with his client through an agent his duties are the same as though he dealt direct.

An examination of the finding of fact and conclusions of law of the trial court affirmatively shows that his judgment is based on a conclusion that no fraud was shown. This being error, this case should be reversed.

For the reasons stated, we recommend that the judgments of the district court and Court of Civil Appeals be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.

PIERSON, J., not sitting.