BENSON et al. v. GREENVILLE NAT.
EXCHANGE BANK.

No. 14149.

Court of Civil Appeals of Texas. Dallas.

Feb. 10, 1950.

Rehearing Denied March 10, 1950.

Stegall & Stegall and Clark, Craik & Weddell, all of Fort Worth, for appellants.

G. C. Harris and Allen Clark, both of Greenville, for appellee.

YOUNG, Justice.

This is a venue case. Appellee's suit of two counts (construction of will and partition of personal property) was against numerous defendants residing in Hunt, Dallas, Tarrant, Ellis, and Travis Counties, to which were interposed pleas of privilege of defendants Joseph Eugene Benson and Walter Lee Benson, the Tarrant County residents. Plaintiff's amended controverting affidavit invoked provisions of subds. 4, 11, 13, and 29a, Art. 1995, Vernon's Ann. St., and upon hearing said pleas were in all things overruled, with exceptions taken and resulting appeal.

Subject matter of suit on its merits relates to a block of stock in First National Bank of Montgomery, Alabama, of which plaintiff below (Greenville National Exchange Bank) alleges ownership and title to an undivided one-fourth interest. Facts antedating the instant litigation should be first stated.

Coleman Abington Mercer Pitts died in Hunt County, Texas, in 1919, leaving a will which was probated in Hunt County. Under its terms he left 231 shares of stock in the First National Bank of Montgomery, Alabama (par value $100, later reissued in certificate of 2310 shares of $10 value) to his sister Mary Grace Benson for life and at her death to become the property of her four sons, Walter Lee Benson, Joseph Eugene Benson, John William Benson and James Coleman Benson. Following are pertinent provisions of the will: "First—I give and bequeath to my sister Mary Grace Benson, (231) two hundred and thirty one shares of First National Bank Stock, of Montgomery, Alabama. Face value ($100.00) one hundred dollars per share, or ($23,100.00) twenty three thousand one hundred dollars. My valuation this stock ($200.00) two hundred dollars per share. The aforesaid bank stock of the First National Bank, of Montgomery, Alabama, is to remain intact, can neither be sold or traded, and only the interest amounting to ($1848.00), one thousand eight hundred and forty eight dollars annually, or (.08) eight percent face value pays (.02) two per cent quarterly as follows: January first, April first, July first and October first. Each quarterly payment amounting to ($462.00) four hundred and sixty two dollars. At the death of Mary Grace Benson, this aforesaid bank stock of First National Bank, of Montgomery, Alabama, shall become the prop-

erty of her four sons, namely: John William Benson, James Coleman Benson, Joseph Eugene Benson and Walter Lee Benson, but this stock shall still remain intact, and can neither be sold or traded by any one of the four, said sons of Mary Grace Benson, individually, or collectively, but only the interest ($1848.00) one thousand eight hundred and forty eight dollars annually or ($462.00) four hundred and sixty two dollars quarterly, to be equally divided among the aforesaid four sons of Mary Grace Benson." Other sections of the will made a sister, Mrs. E. K. Dickinson, and a sister-in-law, Mrs. William Yancy Pitts, beneficiaries in notes and personal property; testator Pitts leaving any residue to his six nephews and one niece, viz.: Above mentioned four Benson brothers, Mrs. W. I. Snodgrass, William Pitts and Frank Pitts, the last named parties also being mentioned by way of bequests. James Coleman Benson, resident of Hunt County, was duly appointed administrator with will annexed of said C. A. M. Pitts estate, qualifying as such and taking into possession in Hunt County all personal estate belonging to deceased; and the administrator was directed by probate court to turn said stock over to Mary Grace Benson under her bequest of a life estate in the 231 shares of bank stock and appointment as sole executrix of that part of the testament.

As already seen, the will provided that upon death of Mary Grace Benson the stock in question should become the property of her four sons. Of these, James Coleman Benson died in 1923 without will, leaving his wife Kate L. Benson as sole surviving heir. In 1946 Kate L. Benson died in Hunt County, leaving a will there probated with Dr. W. L. Yarbrough as independent executor without bond; leaving all property of every kind and character to her two sisters, Mrs. W. L. Yarbrough and Mrs. R. B. Blair, a person of unsound mind, and three others (defendants herein, Mrs. Lettie L. Feltus, Mrs. R. T. Speck, and J. S. Lamkin). John William Benson died in 1924, intestate, leaving as his sole and only heir Lillie Benson (his wife) who later married T. C. Ivey and both are defendants here, residing in Dallas County. Joseph Eugene Benson and Walter Lee Benson are appellants and residents of Tarrant County, being the other two sons to whom was bequeathed a one-fourth interest each in said bank stock; the former, we may assume, presently owning the share inherited under the C. A. M. Pitts will, present status of the latter's remainder interest being shown by the following sequence of facts.

Sometime in the middle Twenties Walter Lee Benson had become indebted to the First National Bank of Greenville, later pledging his one-fourth interest in and to these shares of stock as collateral security and delivering to said bank possession of the entire certificate for 231 shares (later 2310). Benson's note was renewed over several years, payee bank in meantime being succeeded by appellee; and in 1932, just prior to bar of limitation, suit was brought for debt and foreclosure of lien on the pledged stock. Defendant duly answered in the cause, with judgment rendered after hearing for $10,820.13 together with foreclosure; order of sale issuing to sheriff of Hunt County to seize and sell the pledged stock. However, after the property was advertized but before sale, the sheriff was directed to return the order of sale, not further executed. Alias order of sale issued in 1939, the stock again duly advertised and sold by the sheriff to appellee, bill of sale reciting a consideration of $4,500. The judgment just mentioned was not appealed from; reciting in part the conveyance in 1927 for valuable consideration by the First National Bank to the Greenville National Exchange Bank of Benson's secured note, also that Benson by instrument in writing of date January 16, 1925, had sold, assigned, transferred, and conveyed to said First National Bank as collateral security all his right, title, and interest then and thereafter owned in and to the 231 shares of stock; further that the purchaser of said stock at foreclosure sale should be the legal and equitable owner of Walter Lee Benson's interest therein, and the Montgomery, Alabama, bank was thereby authorized to make any necessary transfer.

In above connection plaintiff pled that the Alabama bank has refused to reissue or honor said stock or any portion thereof until the C. A. M. Pitts will has received a judicial construction concerning its recitals that "This stock shall still remain intact and can neither be sold or traded." The mother, Mary Grace Benson, died in 1949. It is plaintiff's contention that any provisions of said will against sale or alienation are invalid and void with result that the instrument should be construed as having vested a fee simple and absolute title to the said 2310 shares of bank stock in the four named sons share and share alike,' subject to the life estate of Mary Grace Benson.[1] Along with its count 1 for construction of will, plaintiff duly invokes the provisions of Art. 2524—1, Vernon's Ann.St., Uniform Declaratory Judgments Law.

Subdivision 4, Art. 1995, Vernon's Ann. St. (first invoked by appellee), reads in part: "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * *" Appellants argue inapplicability of subdv. 4 to plaintiff's pleading and proof under various points, summarized. viz.: (1) That plaintiff's suit embraced two separate and distinct causes of action, one being between plaintiff bank and Walter Lee Benson alone, as to title and ownership of the stock interest claimed by plaintiff, and as to which none of the other defendants were concerned or interested and were not proper or necessary parties; and that said cause of action was fraudulently joined with plaintiff's suit for construction of the Pitts will in an attempt to confer venue in Hunt County over said Walter Lee Benson on the separate and distinct cause of action so asserted against him; (2) that plaintiff bank was neither an heir nor devisee under the will of C. A. M. Pitts, deceased, and that its suit to construe said will was premature; it being necessary for plaintiff bank to establish the validity of the alleged purchase of Walter Lee Benson's interest in the Alabama bank stock under the 1932 judgment and order of sale; and that the joining of cause of action for title and ownership of said stock as between it and W. L. Benson with its cause of action for construction of will against the other parties was fraudulently done in an attempt to confer Hunt County venue over said W. L. Benson; and (3) there existed no bona fide controversy between plaintiff bank and the Hunt County defendants such as is required under exception 4, but that said plaintiff and local defendants were making the same and identical claims as to how the C. A. M. Pitts will should be construed; said local defendants being made parties hereto in an attempt to fraudulently confer venue over both W. L. and Joseph Eugene Benson in Hunt County.

■ To sustain venue against the nonresident defendant under subd. 4, Art. 1995, Vernon's Ann.St., a plaintiff must prove that one of the defendants is a resident of the venue county and further plead and tender proof of a cause of action against the local defendant; at the same time alleging a joint cause of action against all defendants or a cause of action against the local defendant so intimately connected with the cause of action against the non-resident as that the two may be joined under the rule intended to avoid a multiplicity of suits; the all-sufficient proof of a proper joinder being supplied by the petition of plaintiff. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300. An inspection of aforesaid petition discloses that defendant Walter Lee Benson has mistakenly characterized the Bank suit as one for establishment of title and ownership to his original stock interest improperly joined with another against all defendants to construe the particular will. The pleadings of plaintiff unqualifiedly assert full title to the interest of said Benson, acquired through judicial sale, count 1 thereof being for will construction, propounding questions to the court for an-

---

1. In Ivey v. Neyland, Tex.Com.App., 25 S.W.2d 313, the court appears to have given such a construction to the will in question with respect to the interest of John William Benson.

swer as to its meaning; the second count being for a partition of the stock in consequence of its one-fourth interest, making parties all beneficiaries under the Pitts will, inclusive of residuary legatees; petitioner charging that such residuary legatees are claiming some right, title and interest in and to said stock, but that such defendants have no interest.

 Appellee's amended petition showing on its face to be one in which all defendants are properly joined under subdv. 4, and residence of the local defendants in Hunt County being proven, plaintiff's remaining burden was proof in fact of a cause of action against these defendants (local).[2] The statement of Dr. Yarbrough, executor of estate of Kate L. Benson, on behalf of local defendants (pursuant to request for admissions under Rule 169, Texas, Rules of Civil Procedure) is that he makes no claim of invalidity concerning provision of the Pitts will against alienation or sale of stock; with result of an undoubted controversy between plaintiff bank and one of the local defendants relative to a proper construction of the will. And since the local defendants hold through a legatee under the will and are to be directly affected by a suit for its construction, they are proper parties, to say the least; Arterbury v. United States Nat. Bank, etc., Tex.Civ.App., 194 S.W.2d 803; Eppenauer v. Schrup, Tex.Civ.App., 121 S.W.2d 473; Alexander v. Alexander, Tex.Civ.App., 265

2. Appellants strenuously argue through numerous points that appellee has no cause of action or standing as a litigant against anyone, in that on face of the record the Sheriff's sale passed no title to the W. L. Benson interest, the transaction being either "void or voidable." They say that when the 1939 order of sale issued, the 1932 Hunt County judgment had become dormant; and further that a valid levy on the stock interest in question could be made only at the home office of the Alabama bank, to wit, Montgomery, under controlling statutes (Arts. 3795, 3798, Rev.St., now Rule 641). Validity of plaintiff's title to the stock may be thus assailed only on direct attack of the 1932 judgment which does not appear, unless the pleading of appellants denominated "Exceptions and reply to plaintiff's amended controverting affidavit" may be so classified, a point we need not pause to consider. At any rate the questions posed can form no part of the issues on venue, but are matters solely for determination on a trial to the merits. A discussion of these presumed defenses would be premature at this juncture, but it may be remarked in passing that a sheriff's sale, even on basis of a dormant judgment (and appellee denies dormancy), passes title to the purchaser; being a voidable proceeding only, and not subject to collateral attack. 18 Tex.Jur. p. 576.

Similarly, Rule 641, Texas Rules of Civil Procedure (old Arts. 3795, 3798), relating to method of levy on certificates of stock as in ordinary execution, is in no wise applicable to judicial sales, i. e., sales made pursuant to decree foreclosing lien on specific property (in this instance already in custody of court). The distinction is clearly drawn in 18 Tex.Jur. pp. 534, 535, viz.: "In the case of a judicial sale or sale of property in the custody of the court, a valid order of the court and a sale thereunder are all that is required. But in the case of a sale under execution on a money judgment, there should be a valid judgment, execution, levy and sale. Likewise an order of sale in a judgment foreclosing a lien may be distinguished from the ordinary writ of execution in that the order of sale commands the sale of specific property, and does not become operative as an ordinary execution until the sale is made, and not then unless there is a balance remaining unpaid on the judgment." The leading case cited by appellants in this connection, Presnall v. Stockyards Nat. Bank, Tex.Civ.App., 151 S.W. 873, 877, affirmed Stockyards Nat. Bank v. Presnall, 109 Tex. 32, 194 S. W. 384, is in accord with above quoted and settled law. Bearing in mind the 1932 judgment contains recitals to the effect that Benson had transferred the certificate of stock to appellee bank's predecessor as collateral security, Presnall's appeal holds: "It is quite common to deal with a certificate of stock as did Rogers and the bank here (pledgor and pledgee). In such transactions a purchaser under foreclosure undoubtedly acquires the equitable title to the stock in the corporation by reason of the assignment and power of sale, and such purchaser has a right to call upon the corporation to clothe him also with the legal title by permitting a transfer to himself on its books, and to demand a new certificate in his own name."

S.W. 1072. Certainly we find no evidence of a fraudulent joinder either here or relating to appellee's alternative count for partition.

Subdv. 13, Art. 1995, Vernon's Ann.St., also invoked by appellee, reads in part: "Suits for the partition of land or other property may be brought in the county where such land or other property, or a part thereof, may be, or in the county in which one or more of the defendants reside, or in the county of the residence of any defendant who may assert an adverse claim to or interest in such property, or seeks to recover the title to the same * * *."

We think the quoted exception is likewise applicable to the bank's count 2 for partition on the following grounds: First, shares of corporate stock are deemed personal property within contemplation of our venue laws; Art. 1334, R.S. (now covered by Art. 1358—1 et seq., Uniform Stock Transfer Act, Vernon's Ann.St., Acts 1943 Legislature). Gohlman, Lester & Co. v. Griffith, Tex.Com.App., 245 S.W. 233; and it is agreed by all parties hereto that the certificate for 2310 shares of stock was situated or located in the City of Greenville, Hunt County (in possession of plaintiff bank). In the case just cited, certificates of stock held as security for a debt were classified as property within the meaning of subdv. 12, Art. 1995, V.A.S., providing that "A suit for the foreclosure of a mortgage or other lien may be brought in the county where the property or any part thereof subject to such lien is situated." It is to be observed that the wording of sections 12 and 13 with respect to subject matter is almost identical, the latter stating in part that "Suits for the partition of land or other property may be brought in the county where such land or other property, or a part thereof, may be * * *"; and surely if a suit can be maintained for foreclosure of lien on shares of stock in the county where the certificates are located, then a suit for partition of shares can also be brought where the certificates are located or *may be.*

Second: Two defendants, independently claiming another one-fourth stock interest under the basic will, were residents of Hunt County. This fact, together with the self-evident nature of plaintiff's petition as one for partition, again satisfies the requirement of subdv. 13. Gilbert v. Gilbert, Tex.Civ.App., 195 S.W.2d 930; Id., 145 Tex. 114, 195 S.W.2d 936. Plaintiff bank has here simply included as necessary parties all those claiming part ownership or interest in and to the subject matter of suit; the right of a joint owner to compel a partition being statutory. Art. 6101, V.A.S. Defendant W. L. Benson was a proper party to this phase of the litigation within terms of Art. 6082, Vernon's Ann.St. He was a "claimant," aside from his original one-fourth interest in the stock, perforce of the assignment from residuary legatees, Mrs. E. K. Dickinson et al., to himself and brother of all their right, title and interest in and to the 2310 shares.

Appellee's right as a petitioner to join a suit for will construction with a count for partition is not questioned; and if venue of either of these causes is properly laid in Hunt County, then the venue of both actions is maintainable there; i. e., in the county having venue of one of them. 43 Tex.Jur. 771; Sabens v. Smith, Tex.Civ.App., 118 S.W.2d 324; Boyd v. San Antonio Nat. Bank, Tex.Civ.App., 171 S.W.2d 375.

On this preliminary hearing we are required to confine our discussion to questions of venue. However, in point 4, appellant argues that the bank's title as part owner of the stock was wholly void because the judgment of the Hunt County probate court, back in 1920, in ordering the temporary administrator of the Pitts will to turn over the 2310 shares of stock to Mary Grace Benson, thereby construed the will as having bequeathed to her complete title to the stock, the present suit constituting a collateral attack on this earlier judgment. In making the contention appellants overlook the fact that *at that time* (1920) Mary Grace Benson, as life tenant, was the only one entitled to a delivery of

the stock; that she had been made independent executrix of the will so far as this property was concerned and for such reason, if no other, was entitled to its possession. Furthermore, the probate court had no more jurisdiction to determine title to the stock, Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, than it had to construe the will, 44 TexJur. 764, both being within the exclusive jurisdiction of the district court.

 Lastly, appellants urge the point that the controverting affidavit was belatedly drawn by attorneys for appellee and caused to be back-dated in order to show a proper file mark; in consequence of which the trial court had no jurisdiction other than to sustain their pleas. The transcript before us discloses a timely filing of affidavit; and evidence adduced on the issue is more than sufficient to support the implied finding of Judge Myers to the same effect. Moreover, with reference to the attorneys thus impugned, the trial court and this Court as well, may take judicial cognizance of their high standing, both professionally and otherwise, in matters of ethical conduct and practices.

The order overruling pleas of privilege is in all things affirmed.