### BENSON et al. v. GREENVILLE NAT. EXCHANGE BANK et al.

### No. 6585.

Court of Civil Appeals of Texas. Texarkana.

Nov. 6, 1952.

Rehearing Denied Jan. 1, 1953.

Clark & Craik, Chester Clark and Stegall & Stegall, Ft. Worth, Sam B. Hall, Jr., Ernest F. Smith and William L. Taylor, Marshall, for appellants.

Allen Clark, G. C. Harris and William C. Parker, Greenville, Geo. K. Holland, Dallas, for appellees.

LINCOLN, Justice.

The first and principal question involved in this appeal is construction of the will.

of Coleman Abington Mercer Pitts, who died December 13, 1919. His will dated August 13, 1916, was duly probated in Hunt County on February 3, 1920. The pertinent portions of said will calling for construction read as follows:

"First—I give and bequeath to my sister Mary Grace Benson, (231) two hundred and thirty one shares of First National Bank Stock, of Montgomery, Alabama.

"Face value ($100.00) one hundred dollars per share, or ($23100.00) twenty three thousand one hundred dollars. My valuation this stock ($200.00) two hundred dollars per share.

"The aforesaid bank stock of the First National Bank of Montgomery, Alabama, is to remain intact, can neither be sold or traded, and only the interest amounting to ($1848.00), one thousand eight hundred and forty eight dollars annually, or (.08) eight per cent face value pays (.02) two per cent quarterly as follows: January first, April first, July first and October first. Each quarterly payment amounting to ($462.00) four hundred sixty two dollars."

"A. At the death of Mary Grace Benson, this aforesaid bank stock of First National Bank, of Montgomery, Alabama, shall become the property of her four sons, namely: John William Benson, James Coleman Benson, Joseph Eugene Benson and Walter Lee Benson, but this stock shall still remain intact, and can neither be sold or traded by any one of the four said sons of Mary Grace Benson, individually or collectively, but only the interest of ($1848.00) one thousand eight hundred and forty-eight dollars annually or ($462.00) four hundred and sixty two dollars quarterly, to be equally divided among the aforesaid four sons of Mary Grace Benson."

The bank stock referred to above was later recalled by the First National Bank of Montgomery, Alabama, and re-issued in 2,310 shares of the par value of $10 per share. A certificate for the 231 shares original issue was delivered to Mary Grace Benson. When the stock was re-issued a new certificate for 2,310 shares was executed by the Montgomery Bank. The Greenville Exchange National Bank claims to be the owner of one-fourth of said shares of stock, and the suit grew out of its claim for such stock, as against the appellants who claim under the will of Pitts, or, in the alternative, by intestacy. The judgment upheld the claim of the Greenville National Exchange Bank, decreeing it to be the owner of an undivided one-fourth or 577½ shares of such stock. It also decreed an equal interest to appellant Joseph Eugene Benson, and the remaining one-half to appellees other than the Greenville Bank.

██ In our opinion there can be little question but that the foregoing will devised a life estate in all of the stock to the testator's sister Mary Grace Benson, with remainder over to her four sons, John William Benson, James Coleman Benson, Joseph Eugene Benson and Walter Lee Benson. The will is entirely too clear in that respect to call for discussion. 28 Tex.Jur., p. 52, Sec. 2. "* * * an estate for life only is passed by an instrument which purports in one clause to transfer the fee or absolute ownership, but which thereinafter creates a remainder in another person." 54 Tex.Jur., p. 55, Sec. 4. Not only so, but the remainder became vested in the four sons at the death of the testator. "A devise by A to B for life with remainder at his death to C creates a vested remainder in C upon the death of A, subject to B's life estate. The use of 'at his death' or words of similar import denote the time when the right of possession and enjoyment of the estate begins, and not the time when the estate in remainder vests." Rust v. Rust, 147 Tex. 181, 211 S.W.2d 262, 267, opinion by Chief Justice McClendon approved and adopted 147 Tex. 181, 214 S.W.2d 462. See also Bufford v. Holliman, 10 Tex. 560; Caples v. Ward, 107 Tex. 341, 179 S.W. 856.

██ The restriction against sale or trade of the bank stock while in the hands of Mary Grace Benson, the life tenant, was not necessary so far as an absolute disposition of the bank stock is concerned. Having only a life estate therein she could not

sell or otherwise dispose of the stock. However, as to her life interest therein, it is uniformly held that the holder of a life estate can dispose of the same. "A life estate may be transferred by conveyance inter vivos, the effect being to create in the grantee an estate for the life of the grantor." 28 Tex. Jur., p. 62, Sec. 10; 33 Am.Jur., p. 741, Sec. 262; 31 C.J.S., Estates, § 51, p. 66. See also Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527. The will does not purport to restrain Mrs. Benson from alienating her life interest in the bank stock, and if it should be construed as implying such restraint, the provision would be void. Sprinkle v. Leslie, 36 Tex.Civ.App. 356, 81 S.W. 1018, error refused. The rule relating to restraints against alienation will be further discussed presently.

■ Appellants contend that the language of the paragraph which we have marked A should be construed as devising a life estate in the four sons of Mary Grace Benson, and that the trial court erroneously construed said paragraph as devising to them an absolute or fee simple title to the bank stock. When the testator wrote in his will that at the death of Mrs. Benson the bank stock "shall become the property of her four sons," naming them, he was using plain, simple, non-technical language. He must be presumed to have known its import, to have meant what he said and to have said what he meant. Classen v. Freeman, Tex.Com.App., 236 S.W. 979. This bank stock had been the property of the testator,—in some way it had "become" his property. As such his absolute or fee simple ownership could not be questioned. We have no difficulty in reaching the conclusion that, if the words "shall become the property of her four sons," naming them, stood alone, without the further expressions following them in the paragraph marked A, a fee simple estate in the bank stock, and not a life estate therein, would have devolved on the four sons.

■ It is urged by appellants that the estate in the four sons is limited to a life interest by express provisions that, while in their hands, (1) "this bank stock shall still remain intact, and can neither be sold or traded by any one of the four said sons of Mary Grace Benson, individually or collectively"; and (2) "only the interest * * * to be equally divided among the aforesaid sons of Mary Grace Benson." In considering the effect of these provisions we must be guided by certain canons of construction. The first and cardinal rule is to ascertain the testator's intention, and then to enforce or effectuate that intention if it is not unlawful. Other general rules pertinent to this inquiry are stated, and authorities given, in 44 Tex.Jur., p. 738, Sec. 173, as follows: "Generally, the greatest estate will be conferred on a devisee that the terms of the devise permit; and when an estate is given in one part of a will, in clear and decisive terms, it cannot be cut down or taken away by any subsequent words that are not equally clear and decisive. At any rate, an estate clearly given in one part of a will cannot be disturbed by a subsequent clause which is ambiguous or uncertain in its meaning. Accordingly a will should not be so construed as to diminish or divest an estate therein given unless such a construction is clearly required. A devise of an estate will be deemed a fee simple, unless limited by express words, and a condition which tends to defeat an estate will be strictly construed."

■ There can be no life estate in property, real or personal, without a remainder. It may not be necessary always to name the remainderman, in which case the law would define him. Appellants say in this case the property would pass to the residuary estate or by intestacy. But in such case the will must clearly and unequivocally provide for a life estate, thus to overcome the presumption that the testator intended to give the greater estate. 44 Tex. Jur., p. 827, Sec. 253. The absence of any remainderman as here is a strong indication that a life estate was not intended. In devising the life estate to Mrs. Benson, Pitts expressly named the remaindermen. The fee simple title conferred on the four sons, as already stated, is given in clear and decisive terms. The subsequent clauses (1) and (2) above cannot be held to cut down the estate, for they are not in equally clear and decisive terms.

Clauses (1) and (2) above do not purport to cut down the estate of the four sons. The meaning and intention of clause (1) is clear. It was to restrain selling or trading the bank stock by the remaindermen. As said by Judge Hodges of this court in Diamond v. Rotan, 58 Tex.Civ. App. 263, 124 S.W. 196, 198, writ refused, "That a general restraint upon the power of alienation, when incorporated in a deed or will otherwise conveying a fee-simple right to the property, is void, is now too settled to require discussion." Alienability is a legal incident of property, and restrictions against it are contrary to public policy. Such condition is repugnant to the estate granted. 26 C.J.S., Deeds, § 145, p. 477; Bouldin v. Miller, 87 Tex. 359, 28 S.W. 940; Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149; Estes v. Estes, Tex.Com.App., 267 S.W. 709; Pearson v. Hanson, 230 Ill. 610, 82 N.E. 813; McFadden v. McFadden, 302 Ill. 504, 135 N.E. 31; Bogert, Trusts and Trustees, Vol. 1A, p. 444, Sec. 220; Alexander on Wills, Vol. 2, p. 1556, Sec. 1082; Id., p. 1560, Sec. 1084.

Under all authorities, the provision that the four sons of Mrs. Benson must hold the bank stock intact, and may not "sell or trade" it, is void, and the four sons took under the will a fee simple title free of such restriction. Bogert on Trusts and Trustees, Vol. 1A, p. 453.

There is one well-recognized exception to the rule just stated, namely where an active trust is created. In such case restraints on alienability may be imposed during the term of the trust, Alexander on Wills, p. 1562, Sec. 1085; Griswold's Spendthrift Trusts, p. 2, if not inhibited by the law against perpetuities. But a trust of any kind is not remotely suggested in this will.

Another rule announced by our courts is fatal to appellants' contention. In 23 R.C.L., p. 491, Sec. 16, it is said: "Limitations of remainders in personalty are not favored, and, in order that an intention to create such remainder may be given effect, it must be clearly and unequivocally expressed." In Darragh v. Barmore, Tex. Com.App., 242 S.W. 714, 717, the foregoing rule was applied as follows: "Life estates in 'choses in action, bonds, securities and moneys' are not favored, and the testatrix will not be held to have so intended, unless such intention is clearly and unequivocally expressed." The foregoing quotations were cited with approval and followed in Wykes v. Wykes, Tex.Civ.App., 174 S.W.2d 333, in which the Supreme Court refused a writ of error.

In McNabb v. Cruze, 132 Tex. 476, 125 S.W.2d 288, 289, opinion adopted by the Supreme Court, it is stated: "Plaintiff contends that under Item II of the will she was given a life estate in all property, including this note, and that Item V was to be effective only after her death. It is true that Item II is in language that usually confers a life estate. However, it is a well settled rule that life estates in personal property are not favored. By this is meant that the first taker will be given an absolute fee, instead of a life estate, unless the language of the will clearly and unequivocally manifests a different intention. It is also well settled that as regards personal property language which usually confers a life estate, *unless followed by a gift over*, vests title absolutely. As illustrative cases, see 'Williams v. Williams, 167 Tenn. 26, 65 S.W.2d 561; Union Trust Co. v. Madigan, 183 Ark. 158, 35 S.W.2d 349, and authorities cited." See also 31 C.J.S., Estates, § 133, p. 151.

There is no gift over provided for in this will after termination of the life interest claimed by appellants in the four sons. No penalty, forfeiture, nor reversion is provided if the four sons or any of them should violate the restriction against selling or trading the bank stock. See Bouldin v. Miller, supra. That was the only inhibition invoked by the will, and the four sons were left at liberty to dispose of the bank stock by any other means, such as by gift or by will; these being incidents of a fee title.

It is doubtless these considerations which moved the Commission of Appeals, in an opinion approved by the Supreme Court, to construe this will to the same effect as we do. Ivey v. Neyland, Tex.Com.App., 25 S.W.2d 313, 315. In that case Mrs. T. C. Ivey sought to maintain the suit as a former wife of one of Mrs. Benson's four sons,

Joseph William Benson, he having died intestate long prior to the death of his mother. He left no children and Mrs. Ivey's suit was grounded on the contention that she was the absolute owner of an undivided one-fourth interest in the bank stock under the law of descent and distribution. The court said: "It will thus be seen that at the time of the transfer in question (from the plaintiff in that case to the defendants) Mrs. Ivey owned an undivided one-fourth interest in the 231 shares of stock burdened with the right of Mrs. Grace Benson to enjoy the same, and collect the dividends thereon during her natural life." There are other expressions in the opinion equally decisive, but we need not extend this opinion by quotations. The will is definitely construed as conferring a vested remainder in fee simple to Joseph William, and, of course, the same construction must be given concerning the interests of the other three sons, including appellants Joseph Eugene Benson and Walter L. Benson.

The Dallas Court of Civil Appeals has also construed this will. Prior to a trial of this case on the merits a ruling of the District Court of Hunt County on a plea of privilege was appealed to the Dallas Court. Benson v. Greenville National Exchange Bank, Tex.Civ.App., 228 S.W.2d 272. In order for the plaintiff Greenville Bank to maintain venue in Hunt County in face of the plea of privilege filed it was necessary for it to allege and prove that the will in question devised a fee simple title to Mrs. Benson's four sons, and that the plaintiff Bank now owned the one-fourth interest of Walter L. Benson. In other words, the same issues were before the court as are now under discussion. The Dallas Court of Civil Appeals held that the plaintiff had proved its cause of action maintainable in Hunt County. To reach that conclusion it was necessary for it to construe the will as devising a fee simple title of one-fourth each to Walter L. and Joseph Eugene Benson, and that the restraint on alienation attempted by the testator was void.

■ The foregoing decisions, particularly the one by the Commission of Appeals, may not be res adjudicata of the question involved, but are followed under the rule of stare decisis. Benavides v. Garcia, Tex. Com.App., 290 S.W. 739.

■ Appellants urge, however, that if the will in question devised a fee simple title to the four sons of Mary Grace Benson, the gift was to them as a class. The proposition asserted is, that since two of Mrs. Benson's sons, James Coleman Benson and John William Benson, died prior to the death of their mother, the estate vested in the two remaining members of the class, the appellants here. It is not important to discuss when, in Texas, the estate vests in the group, whether at death of the testator or of the life tenant. "The rule or presumption is that a gift is not one to a class where the will designates the takers by name, nor where it identifies them by number, and this inference will be given effect in the absence of a showing of a contrary intention. Where legatees are named as individuals and also are described as a class, the gift by name ordinarily constitutes a gift to individuals, the class description being added merely by way of identification." 44 Tex.Jur., p. 804, Sec. 236. On Burch v. McMillin, Tex.Civ.App., 15 S.W.2d 86, 91, Chief Justice Hickman, then of the Eastland Court of Civil Appeals, said, "One of the essential requisites of a gift to a class is that the gift must be to a body of persons 'uncertain in number at the time of the gift.'" This statement was quoted with approval in Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147. See Hagood v. Hagood, Tex.Civ.App., 186 S.W. 220, writ refused for want of merit.

■ The provision of this will in passing the estate to Mrs. Benson's four sons falls within the purview of the foregoing authorities. This is made additionally clear by the provision that the income from the bank stock should be divided equally among the four sons. We therefore conclude the trial court did not err in his judgment on the matters discussed, and appellants' points 1, 2, 3, 4 and 6 are overruled.

■ The order of the county court in probating the Pitts will read in part as follows: "* * * the property mentioned and described in first paragraph of said

will, namely, 231 shares of the First National Bank of Montgomery, Alabama, * * * having been bequeathed by the testator to Mary Grace Benson by said will, are and the same are hereby set apart to her, and the temporary administrator, J. C. Benson, is hereby directed to deliver said property to said Mary Grace Benson. * * *" Appellants fifth point asserts that the county court, having general jurisdiction in probate matters, and having decreed as above shown, and having distributed the assets of the estate as provided in the will, and no appeal having been taken, the district court was without jurisdiction to determine the ownership of the bank stock, and erred in overruling their plea. We think the contention is completely answered by the Dallas Court of Civil Appeals, 228 S.W.2d 272, when this case was before it on the venue question. The court said in 228 S.W.2d at page 277: "However, * * * appellant argues that the bank's title as part owner of the stock was wholly void because the judgment of the Hunt County probate court, back in 1920, in ordering the temporary administrator of the Pitts will to turn over the 2310 shares of stock to Mary Grace Benson, thereby construed the will as having bequeathed to her complete title to the stock, the present suit constituting a collateral attack on this earlier judgment. In making the contention appellants overlook the fact that at that time (1920) Mary Grace Benson, as life tenant, was the only one entitled to a delivery of the stock; that she had been made independent executrix of the will so far as this property was concerned and for such reason, if no other, was entitled to its possession. Furthermore, the probate court had no more jurisdiction to determine title to the stock, Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, than it had to construe the will, 44 Tex. Jur. 764, both being within the exclusive jurisdiction of the district court." Appellants' fifth point is overruled.

Pertinent to further points to be considered are the following facts: The appellee Greenville National Exchange Bank introduced in evidence a judgment of the District Court of Hunt County in Cause No. 17,414, styled Greenville National Exchange Bank, plaintiff, v. W. L. Benson, defendant, rendered June 13, 1932. The findings are that on October 11, 1927, the defendant W. L. Benson executed and delivered his promissory note to the First National Bank of Greenville, Texas for $6,-707.05, dated April 11, 1928, with interest at ten per cent per annum from date, and providing for an additional 10 per cent as attorney's fees; that the note had been given in renewal of prior notes; that on January 16, 1925, the defendant Benson sold, assigned, transferred and conveyed to said First National Bank all of his right, title, claim and interest which he then had or might thereafter have in and to 231 shares of the capital stock of the First National Bank of Montgomery, Alabama, as collateral security for the payment of the note, and the stock certificate was delivered to said bank; that on December 24, 1927, the First National Bank of Greenville, then being the owner of the note, conveyed the same together with the collateral security aforesaid to the plaintiff the Greenville National Exchange Bank, and the certificate for said 231 shares of the stock was delivered by the First National Bank of Greenville to the Greenville National Exhange Bank; that thereafter the certificate for 231 shares of the par value of $100 per share was called in by the First National Bank of Montgomery, Alabama, and reissued for 2,310 shares of the capital stock at $10 per share; that the Greenville National Exchange Bank was in possession of said certificate at the time of the judgment.

Accordingly, judgment was rendered in favor of plaintiff in that suit against the defendant W. L. Benson, with interest and attorney's fees, and foreclosure on the defendant's interest in the stock certificate and in the stock of the Alabama Bank, and the clerk was directed to issue an order of sale, commanding that the property, that is, the interest of Benson in and to the shares of stock of the Alabama Bank, be sold as under execution and to apply the proceeds in payment of the costs, debt, etc. It further decreed that the purchaser of the stock under such sale shall be the legal and equitable owner of W. L. Benson's interest

in said shares of stock. From this judgment no appeal was taken, and it became final.

On August 24, 1932, an order of sale was issued on said judgment by the District Clerk. The sheriff's return on this order of sale shows that it came to his hand on August 24, 1932, and was executed on August 30, 1932, by levying upon W. L. Benson's interest in the shares as evidenced by the certificate; that it was advertised for sale for the time and in the manner provided by law for sale on September 12, 1932; that on September 10, he was instructed by the plaintiff's attorney that the writ was not to be further executed but was to be returned to the court without a sale, which was done. On June 30, 1939, an alias order of sale was issued by the district clerk. The sheriff's return shows a levy, advertisement, and public sale on July 14, 1939, to the plaintiff in suit for $4,500. Upon the foregoing proceedings the Greenville National Exchange Bank claims to be the owner of said bank stock. Appellants present numerous points of claimed error, the principal ones of which we will now discuss.

■ Appellants assert that the judgment in favor of the Greenville National Exchange Bank and against Walter Lee Benson in cause No. 17,414 was dormant when the alias order of sale was issued on June 30, 1939, under which Benson's one-fourth undivided interest in the bank stock and in the certificate therefor was sold. It is claimed that since the original order of sale was re-called by the plaintiff's attorney in that case it did not constitute the issuance and levy of an execution, under Article 3773, R.S. of Texas, Vernon's Ann.Civ.St. art. 3773, as it existed at that time, providing that the judgment shall be dormant if no execution is issued within twelve months after rendition unless the judgment be revived. On this question we find the rule is correctly stated in 18 Tex.Jur., page 576, where, after quoting the statute referred to, the text says: "It follows that a dormant judgment does not authorize the issuance of an execution. But a writ issued under a dormant judgment is not void or subject to collateral attack; it is sufficient until set aside to empower the sheriff to sell property and pass title to the purchaser." The quoted text is supported by numerous authorities, and by the more recent cases of Stanford v. Dumas, Tex.Civ.App., 137 S.W. 2d 1071, and Collins v. Jones, Tex.Civ.App., 79 S.W.2d 175, 177, error refused. There can be no question but that the attack by appellants in this case was collateral, Stanford v. Dumas, supra, and, even though an execution was issued and sale made on a dormant judgment, the sale made to the appellee bank was valid as far as the alias order of sale was concerned.

■ However, we do not think the judgment was dormant. The first order of sale was issued by the clerk and delivered to the sheriff for service. 10 R.C.L., 1241. He performed every efficient act under it except to make the sale. There is no claim that the sale was not made by reason of any want of diligence or of good faith. It must be presumed that the sheriff acted legally and for good and sufficient cause when he complied with the verbal request to make his return without sale and consequent additional costs. The cases of Harrison v. Orr, Tex.Com.App., 296 S.W. 871 and Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531, chiefly relied upon by appellants, are not in point with the facts of this case. Among other things, each of those cases involved a direct attack upon the sale proceedings, which, of course, included the issuance and service of the original and alias executions. Long before those decisions were rendered, the Supreme Court had held that an execution, alias and pluries executions were sufficient to keep the judgment alive, although no levy was made under any of them (except the last one under which sale was made), and they were each "stayed by order of plaintiff's attorney." Graves v. Hall, 13 Tex. 379. About ten years later the Supreme Court held, "We are also of the opinion that the lien of the judgment was not lost by the return of the execution after the levy, by the direction of the attorney of the plaintiffs in execution." Riddle v. Bush, 27 Tex. 679, citing in approval Graves v. Hall, supra. In Pfeuffer v. Werner, 27 Tex.Civ.App. 288, 65 S.W. 888, 889, error denied, it was insisted that

when execution is sued out without intention to enforce it by levy and sale, or by ordering it returned without levy, the execution is not "issued" within the meaning of the statute. In passing on the question the court said "it does not appear that appellants sued out the executions without any purpose of enforcing them." While in that case there was evidence affirmatively showing diligence and good faith, yet the opinion comprehends that the attack must be on the basis of want of diligence and lack of good faith. Riddle v. Bush is cited in support. In McClaflin v. Winfield, Tex.Civ. App., 279 S.W. 877, 878, it is said: "The contention of the appellee that the judgment became dormant because the execution was returned not executed under the direction of the judgment creditor cannot be sustained," under Pfeuffer v. Warner, and Riddle v. Bush, supra. In R. B. Spencer & Co. v. Harris, Tex.Civ.App., 171 S.W.2d 393, 395, error denied, Justice Folley distinguishes the Orr Case and Ramp Case, supra, and rests the legal question upon the fact as to whether the execution was obtained in the exercise of diligence in enforcement of the judgment or the want of it, and in good faith or the lack of it, remarking, "we think there was neither want of diligence nor lack of good faith. It was at least 'placed where it might have been executed, and some efficient act done under it.'" The writer relies upon the authorities cited above.

In this state of the decisions it is to be observed that neither the Orr Case nor the Harris Case referred to the authorities we have named. In fact, the Orr Case states that the point involved was not authoritatively covered in any Texas case "with which we are familiar". [296 S.W. 876.] We must conclude that counsel and the Court in that case did not consider the facts of that case to come within the purview of the facts of these other cases. We can hardly assume that counsel and the Court overlooked the decisions to which we have referred. The Orr Case further holds the rule to be that issuance of an execution "means something more than mere clerical preparation and includes unconditional delivery to an officer for enforcement in the

manner provided by law." Whether that was done was held to be a fact issue calling for reversal of the judgment. The instant case does not present any such issue. No contention is made that the order of sale, after issuance, was not unconditionally delivered to the sheriff for enforcement, and under the facts in evidence no such contention could be sustained. In view of all of these considerations we cannot assume that the Supreme Court intended in the Orr Case and the Harris Case to overrule or modify the former decisions. Their denial of a writ of error in the case of R. B. Spencer & Co. v. Harris, supra, in which the Orr Case and the Ramp Case were distinguished, convinces us that the Supreme Court was unwilling to extend the holdings in the Orr and Harris Cases beyond the facts of those cases. We therefore respectfully overrule appellants' thirteenth point.

 Appellants' points 12, 14 and 15 assert that the sale of W. L. Benson's interest in the bank stock to appellee bank under the judgment in cause No. 17,414 is void because: (1) the sale was not a judicial sale, as the trial court held, but was an execution sale under art. 3773 and what was then art. 3795, R.S. of Texas, now Texas Rules of Civil Procedure, rule 641, and said statutes were not complied with in that the sheriff did not seize and sell said stock, and did not leave notice thereof with an officer of the corporation, that is, with the First National Bank of Montgomery, Alabama; (2) the situs of the bank stock was in Montgomery, Alabama, was not in Hunt County, and therefore the bank stock was not within the jurisdiction of the court. These contentions were made by the appellants on their appeal to the Dallas Court of Civil Appeals, 228 S.W.2d 272, and that court held against them. We think the Dallas Court of Civil Appeals correctly so ruled. Our courts, as well as our statute, make a clear distinction between sale under execution for a moneyed judgment under art. 3773, and a sale under foreclosure of a lien on specific personal property under an order of sale issued thereon. In Patton v. Collier, 90 Tex. 115, 37 S.W. 413, 414, it was held: "Since a decree establishing a lien upon certain specific prop-

928

erty and an order directing its sale for the payment of the judgment designates the property to be sold, it is evident that a levy is not necessary for that purpose." In Wagner v. Marple, 10 Tex.Civ.App. 505, 31 S.W. 691, error denied, it was held that while the mere delivery of a stock certificate evidencing shares in a corporation without any transfer or endorsement by the owner would not transfer title, yet the mere delivery of the stock would create a right in the bank as pledgee, by virtue of which it could resort to equity if its security was in any way threatened. The inference is clear that had the stock certificate been endorsed by the owner and delivered to the bank, as was done in this case, it would have transferred title to the bank as collateral security.

In the First National Bank of Houston v. South Beaumont Land & Improvement Co., 60 Tex.Civ.App. 315, 128 S.W. 436, error denied, the facts are quite similar to the instant case as regards the sale of corporate stock. Polk had pledged Certificate No. 17, for fifty shares of stock of the South Beaumont Land & Improvement Co., a corporation, to secure his indebtedness on a note. It is strongly implied that the corporation was domiciled in Jefferson County. Upon default the bank brought suit in Harris County and foreclosed its lien on the stock pledged to it by Polk. The sheriff, under an order of sale and after advertisement, sold the corporate stock which was bought in by the judgment creditor. The sheriff did not levy on the stock and did not leave any notice of levy with any officer of the corporation. The Land & Improvement Company refused to recognize the Houston Bank as owner of the stock under the sale, hence the suit for conversion. It was held that the sale was valid and that the purchaser acquired title to Polk's stock, and judgment was given in favor of the Houston Bank and against the Land & Improvement Company.

The statute at the time of the Greenville Bank's foreclosure and sale against W. L. Benson provided that in foreclosure of a lien on specific property the judgment shall order a sale of the specific property "as under execution". Art. 2218, R.S., now Rule 309, T.R.C.P. When personal property is sold by the sheriff after advertising, it has been sold "as under execution". So, also when it has been sold at the courthouse door, and when it has been advertised, and when it is sold to the highest bidder for cash, and when a deed or bill of sale is given to the purchaser. The trial court found that in this case the property was in the custody of the court. This finding is not challenged and it must be accepted as correct and is supported by the record. If so, then a levy as in case of ordinary execution to satisfy a money judgment, without foreclosure of any lien would not be necessary. The authorities cited by appellants fall within that class of cases requiring a levy to enforce an unsecured money judgment. The authorities above cited give practical effect to and illustrate the reasonableness of art. 3813 as it existed at that time (now embodied in Rule 649, T.R.C.P.), as follows: "Personal property shall not be sold [under execution] unless the same be present and subject to the view of those attending the sale, when it is susceptible of being thus exhibited, except shares of stock in joint stock or incorporated companies, and in cases where the defendant in execution has merely an interest without right to the exclusive possession in which case the interest of the defendant may be sold and conveyed without the presence or delivery of the property." Whether it was or was not a judicial sale, we think the sale as made was sufficient to give to the purchaser, the Greenville National Exchange Bank, at least an equitable title to the interest of W. L. Benson in the stock of the Montgomery Bank. The holding of the trial court that the sale in cause No. 17,414 was a judicial sale appears to find support in 18 Tex.Jur., pp. 534, 505, and in Presnall v. Stockyards National Bank, Tex.Civ.App., 151 S.W. 873, affirmed 109 Tex. 32, 194 S.W. 384.

The situs of shares of corporate stock has been a subject of much discussion by the courts of this country. Without any attempt at historical review, we think it is now well settled that shares of corporate stock are personal property in the nature of choses in action; that a certifi-

cate of stock is personal property, and that the modern view is that the situs of the stock may be at the domicile of the corporation, and at the same time may be at the place of residence of the owner when he is in possession of the certificate. 13 Am. Jur., p. 300, Sec. 174; Lohman v. Kansas City S. Ry. Co., 326 Mo. 819, 33 S.W.2d 112, 72 A.L.R. 172; Direction der Disconto-Gesellchaft v. U. S. Steel Corp., D.C., 300 F. 741, affirmed 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495; Gohlman, Lester & Co. v. Griffith, Tex.Com.App., 245 S.W. 233; Benson v. Greenville National Exchange Bank, Tex.Civ.App., 228 S.W.2d 272, 277. W. L. Benson at the time he created the debt to the bank, and at the time of foreclosure, was a resident of Hunt County. Mary Grace Benson was then living, and she, too, resided in Hunt County. The testator during his lifetime resided in that county and his will was probated there. At all times since Benson created the debt with the First National Bank and later with the Greenville National Exchange Bank the situs of the stock and the stock certificate were in the county. After it was pledged to secure the debt the certificate was in custody of the pledgee. We think the case of Gohlman, Lester & Co. v. Griffith, Tex. Com.App., 245 S.W. 233, opinion approved by the Supreme Court, upholds the contention of appellees that the situs of the bank stock was in Hunt County at the time of foreclosure and sale. In that case there was a pledge of certificates of corporate stock as in the instant case. The court held stock certificates were properly situated in a county other than that of the corporation. Tex.Civ.App., 200 S.W. 233. Cited in support of its holding was Simpson v. Jersey City Contracting Company, 165 N.Y. 193, 197, 58 N.E. 896, 898 55 L.R. A. 796. In the cited case the New York Court said: "The defendant had, to the extent of its ability, transferred to the trust company, as security for the payment of its indebtedness, whatever was its interest in the foreign corporation, as evidenced by the delivery of the certificates of stock. Did it not, therefore, clearly have property rights or interests within this state, which could be impounded by our courts to abide

the result of the litigation over the plaintiff's claim? I think so. The distinctions sought to be drawn are largely artificial. The truth is that it did have property here, in the common acceptation of the term, as well as in the eye of the law. Certificates of stock are treated by business men as property for all practical purposes. They are sold in the market, and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand, and they are the subject of larceny. See In re Whiting's Estate, 150 N.Y. 27, 44 N.E. 715, 34 L.R.A. 232." Many other authorities might be cited in support of these holdings but we believe the foregoing to be sufficient. Appellants' Points 11, 12, 14 and 15 are overruled.

What we have said determines the substantial merits of this appeal. We have considered appellants' remaining points but find that they present no error, and they are overruled. We are indebted to counsel for all parties for very able and exhaustive briefs, which have aided us greatly in our consideration of this appeal. We think the learned trial court has correctly decided all matters raised, and finding no error in the record, the judgment is affirmed.